CHACE et al.

v.

DORCY INTERNATIONAL, INC. et al., Appellees; KANSA
GENERAL INSURANCE COMPANY, Appellant, et al.

[Cite as *Chace v. Dorcy Internatl., Inc.* (1991), 68 Ohio App.3d 99.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 58021, 58022, 58197 and 58198.

Decided March 4, 1991.

100

*Reminger & Reminger Co., L.P.A., William P. Farrall* and *Craig A. Marvinney,* for appellees Dorcy International, Inc., Fuqua Industries, Inc. and J.C. Penney Co., Inc.

*Weston, Hurd, Fallon, Paisley & Howley, Stephen J. Werber, Carolyn M. Cappel, John G. Farnan* and *William H. Baughman,* for appellant Kansa General Insurance Company.

*Gallagher, Sharp, Fulton & Norman* and *Burt J. Fulton,* for defendant Griffin Products, Inc. (1982).

---

KRUPANSKY, Chief Justice.

This convoluted appeal represents four consolidated appeals from two distinct cases which were consolidated at the trial level. The judgment entry in the two consolidated cases purportedly reflects, *viz.,* (1) the approximately $2,000,000 tort settlement agreement between three of six party defendants and (2) a declaratory judgment resolving the issue that Kansa General Insurance [1] owed a defense and indemnification as well as a money judgment to the manufacturer and its vendors since the insurer, Kansa General, refused to defend in the tort action.

The judgment entry of June 5, 1989 reflects the trial court confirmed settlement of approximately $2,000,000 and held Kansa responsible *viz.:* (1) for liability coverage of $1,000,000 policy limits; and (2) legal fees and expenses to defend the Chace claim incurred by Griffin Products (1982) Ltd.

---

1. Kansa General Insurance will hereafter be referred to as Kansa.

These actions were appealed by Kansa and assigned case Nos. 58021 and 58022.

The judgment entry of July 21, 1989 journalized *inter alia* the final amounts Kansa was to pay for expenses in the two actions as follows: (1) all expenses and fees associated with the declaratory judgment action; and (2) all expenses, fees and costs incurred for investigation, negotiation and defense of the claims against Kansa in the Chace tort action including attorney fees. Kansa appealed and on appeal these cases were assigned case Nos. 58197 and 58198.

Essentially, the dispute herein centers upon whether defendant-appellant, Kansa General Insurance Company, a Finnish company with offices in Montreal and Toronto, Canada, owed a defense and indemnification to a Canadian manufacturer.[2] In the declaratory judgment action, a determination was desired whether this manufacturer, *i.e.*, Griffin Products, Inc., and its vendors were owed a defense pursuant to a vendor's clause of a contract of insurance to the full $1,000,000 limits of a comprehensive liability insurance policy No. 2000184. Kansa policy No. 2000184 was ostensibly issued to Griffin Products, Inc.,[3] a Canadian company which manufactured motorcycle helmets. The helmets were distributed in the United States by Dorcy International ("Dorcy") and Fuqua Industries ("Fuqua") and retailed in Ohio by J.C. Penney Co., Inc. ("Penneys").[4]

A chronological overview of each lower court case is presented for clarity.

### Common Pleas Tort Action Case No. 077658— Chace v. Dorcy, Fuqua and J.C. Penney

Plaintiff Sharon Chace filed a complaint July 16, 1984 as guardian of Ross Chace, an incompetent, on his and her own behalf sounding in tort for strict product liability and negligence. This complaint claimed that on or about August 4, 1984 Chace's husband, Ross, was irreparably brain damaged when

---

2. Kansa claims it did not insure, as such, the company that manufactured the helmet since the company was not a named insured under the policy No. 2000184. However, the policy, during the period encompassing and including the date of accident reflects as insureds the following: (1) Griffin Products, Inc.; (2) Griffin Products; (3) Griffin Products "1982" Limited; (4) Mr. Maurice Pinsoneault operating as 115132 Canada Inc.; and (5) 11532 Canada Inc. and/or Maurice Pinsonneault. (Note two different spellings of surname.)

3. Griffin Corporation and Griffin Products, Inc. both were bankrupt at the time of litigation. The remaining assets of the helmet division were purchased by a new company owned by Griffin Products, Inc. (1982) which was the successor company forced to defend the tort claim.

4. The helmet responsible for injuries to plaintiff's ward was apparently purchased from J.C. Penney in Niles, Ohio.

thrown from the back of a motorcycle on State Route 322 in Cuyahoga County while wearing a defective helmet manufactured, distributed and sold by defendants. The second amended complaint filed July 2, 1986 named six corporate defendants in strict tort liability for defective helmet claiming $7,500,000 in damages, *viz.*, (1) Dorcy, (2) Griffin Corporation, (3) Fuqua, (4) J.C. Penney, (5) Griffin Products, Inc., and (6) Griffin Products, Inc. (1982). In addition, the complaint named two individuals in negligence, *viz.*, (1) the driver of the motorcycle, Jeffrey Kassay, who swerved, and (2) the driver of a truck, Eugene Baker, who either stopped or slowed. These two individuals were later dismissed with prejudice by plaintiff.

The stipulated facts indicate Sharon Chace settled her claims against the three corporate defendants, *i.e.*, Dorcy, Fuqua and J.C. Penney, for over $2,000,000. Thereafter, Dorcy was assigned all rights of the parties to indemnification from Kansa. Griffin Corporation and Griffin Products, Inc. were bankrupt and did not present a defense. Griffin Products, Inc. (1982) was forced to present a defense in the *Chace* claim even though it claimed it did not produce the defective helmet.

The three corporate defendants who did settle with plaintiff, *i.e.*, Dorcy, Fuqua and J.C. Penney, claimed coverage under the Griffin Products, Inc. policy No. 2000184 as vendors and third-party beneficiaries. Kansa Insurance maintained it did not insure Griffin Products, Inc. or Griffin Products, Inc. (1982). In addition, Kansa asserted affirmative jurisdictional defenses, *viz.*, lack of in personam jurisdiction and failure of service of process, thus, Kansa refused to participate in settlement negotiations.

### Common Pleas Declaratory Judgment No. 120406—Dorcy, Fuqua et al. v. Kansa

On December 2, 1986,[5] Dorcy, Fuqua, and J.C. Penney (hereinafter plaintiff-vendors) filed a complaint seeking a declaratory judgment against Kansa General Insurance. In this action, plaintiff-vendors claimed Policy No. 2000184 issued to the named insured, *i.e.*, Griffin Products, Inc., afforded coverage to plaintiff-vendors under the vendors endorsement section up to policy limits of $1,000,000. The complaint demanded coverage up to the $1,000,000 limits of the Kansa policy, as well as demanding Kansa pay attorney fees which plaintiffs incurred to defend in case No. 077658 and costs of that tort action.

The declaratory judgment and tort action were consolidated at the trial level. On March 18, 1988 the trial court overruled Kansa's motion to dismiss

---

5. Trial was scheduled for December 23, 1986 and settlement reached on that date in case No. 077658.

for lack of jurisdiction under the long-arm statute, insufficiency of service of process and failure to state a claim and further ordered Kansa to respond and appear. A hearing was held April 25, 1989 relative to Kansa's concerns regarding final judgment.

Thereafter, on June 5, 1989, the trial court journalized a judgment entry confirming settlement of the Chace claim for $2,000,000. The trial court construed the contract of insurance, No. 2000184, to provide defense and indemnification, to plaintiff-vendors via the vendors clause and issuance of policy No. 2000184 to Griffin Products, Inc., who the court determined was the named insured as of August 4, 1982 when the Chace tort claim arose. The trial court and counsel stipulated Kansa did not waive the affirmative defense of lack of jurisdiction for purposes of appeal.

Kansa, the insurer, was ordered to pay $1,000,000 policy limits to Dorcy, Fuqua and J.C. Penney of the over $2,000,000 settlement with Chace. Kansa further was ordered to pay attorney fees, costs and interest. Kansa timely appealed from these judgments of the trial court July 3, 1989 in appellate case Nos. 58021 and 58022.

On July 21, 1989, the trial court journalized the final amounts of legal fees, costs and expenses which judgment Kansa timely appealed August 3, 1989 in appellate case Nos. 58197 and 58198. All appellate case numbers, *viz.*, 58021, 58022, 58197 and 58198, have been consolidated on this appeal.

■ Defendant-appellant Kansa Insurance Company's first assignment of error follows [6]:

"The trial court erred in determining that it could assert in personam jurisdiction over Kansa General Insurance Co., a foreign corporation which does no business in the state of Ohio.

"A. Plaintiffs have failed to sustain their burden of proof to establish the facts necessary to support service of process.

"B. Asserting in personam jurisdiction for Kansa erroneously ignored the importance of Kansa's status as a foreign national.

"C. The trial court's assertion of jurisdiction violated the minimum contacts requirement and deprived Kansa of fair play and substantial justice."

Defendant-appellant's first assignment of error lacks merit.

Defendant-appellant principally asserts no personal jurisdiction over Kansa exists in the state of Ohio since Kansa General Insurance is a foreign insurer,

---

6. All assignments of error are set forth exactly as designated in appellant's brief.

has no minimum contacts with Ohio, and subjecting Kansa to Ohio jurisdiction would necessitate depriving Kansa of due process of law.

The determination whether Ohio has personal jurisdiction over a non-resident is a two-step process; the court must first consider the plain language of the state's "long-arm statute" and applicable civil rule to determine whether under the facts of the particular case jurisdiction lies. See, *e.g.*, R.C. 2307.382; Civ.R. 4.3; *Kentucky Oaks Mall v. Mitchell's* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477. If jurisdiction does lie, the court must then decide whether granting jurisdiction comports with due process of the Fourteenth Amendment to the United States Constitution. See *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *Fallang v. Hickey* (1988), 40 Ohio St.3d 106, 532 N.E.2d 117.

Personal jurisdiction over a non-resident defendant is governed by R.C. 2307.382, which states in relevant part:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

"(3) Causing tortious injury by an act or omission in this state;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does not solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(5) Causing tortious injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

"(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

"(8) Having an interest in, using, or possessing real property in this state;

"(9) Contracting to insure any person, property, or risk located within this state at the time of contracting."

Concomitantly, the applicable civil rule, *i.e.*, Civ.R. 4.3, states service of process may be made on non-residents in pertinent part as follows:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

"(3) Causing tortious injury by an act or omission in this state including but not limited to actions arising out of the ownership, operation or use of a motor vehicle or aircraft in this state;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;

"(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(6) Having an interest in, using, or possessing real property in this state;

"(7) Contracting to insure any person, property, or risk located within this state at the time of contracting[.]"

Therefore, whether one considers Kansa was "transacting any business" in Ohio or "contracting to insure any person, property, or risk located within this state at the time of contracting," the constitutional touchstone of analysis of whether personal jurisdiction comports with due process involves inquiry into whether Kansa had purposely established "minimum contacts" with Ohio, the forum state. *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92, 102, citing *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542.

The trial court judge found Kansa, pursuant to the clear terms of its insurance policy No. 2000184, undertook to insure Griffin Products, Inc., the named insured, the manufacturer of the defective motorcycle helmet. This helmet allegedly caused irreversible brain damage to plaintiff's ward as the result of a motorcycle accident. Endorsement No. 4 of said insurance policy provides indemnification to any entity involved in "distribution or sale" of the product, *i.e.*, the helmet.

Indeed, in *Asahi, supra,* 480 U.S. at 119–120, 107 S.Ct. at 1035–1036, 94 L.Ed.2d at 108–109, quoting *World–Wide Volkswagen v. Woodson* (1980), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490, the Supreme Court characterized as foreseeable, any litigation in a state where defendant's products were regularly sold as "sufficient minimum contacts" as follows:

" 'Hence if the *sale* of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the *manufacturer* or *distributor* to serve, *directly or indirectly,* the market for its product in other States, it is *not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.* The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers* in the forum State.' " (Emphasis *sic* in part and added in part.)

Hence, Dorcy, Fuqua and J.C. Penney, co-defendants who either distributed or sold the helmets, had sufficient minimum contacts in Ohio by virtue of the foreseeability a consumer at an Ohio store would purchase and use the helmet and possibly be injured. Furthermore, Kansa, by virtue of its indemnification of these distributors and vendors implicitly knew the products were sold in the United States and Ohio and thereby were entered into "the stream of commerce." Thus, Kansa, as the insurer, could "foreseeably" expect via the stream of commerce theory to be required to indemnify a third-party beneficiary of its insurance contract with the manufacturer, Griffin Products, Inc. in the state of Ohio. See *Burger King, supra; World Wide Volkswagen v. Woodson, supra.*

The non-resident defendant has purposefully established minimum contacts where, as here, the defendant deliberately has created continuing obligations between himself and residents of the forum state. *Kentucky Oaks Mall, supra,* 53 Ohio St.3d at 77, 559 N.E.2d at 481. Since Kansa's insureds reside within the state and are governed by Ohio law, Kansa's transactions with its insureds are also both governed and protected by Ohio law, thus, it is "not unreasonable to require [it] to submit to the burdens of litigation in the forum as well." (Citations omitted.) *Id.*

The insurance contract entered into by Griffin Products, Inc. in Canada with Kansa created ongoing duties and obligations for the term of insurance and mandated Kansa had a duty to defend and indemnify its insured and its distributors and vendors for the viable life of the contract. Furthermore, since Kansa is in the business of insuring, settling and defending its insureds "the defendant's conduct and connection with the forum State are such that

[it] should reasonably anticipate being haled into court there. * * * " *Id.* at 77, 559 N.E.2d at 481, citing *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542 (quoting *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501). Thus, we are convinced Kansa's conduct under the broad language of Civ.R. 4.3 and R.C. 2307.382 is "transacting business" or undertaking a contract to insure "property, or risk located within this state."

Once having decided Kansa's conduct falls within the purview of R.C. 2307.382 and Civ.R. 4.3, the inquiry becomes whether it is "fair play and substantial justice" to require Kansa to litigate or defend its insureds in Ohio. See *Kentucky Oaks Mall, supra.*

Kansa is well able to present a defense for its insureds in the state of Ohio as it has been demonstrated by this appeal and indeed succeeded in hiring a Cleveland law firm to defend. The deposition testimony of Kansa's supervisor, Monique Bain, indicates Kansa has defended other insureds in lawsuits filed in Ohio involving over thirty-five claims and over $1,700,000. (See Bain Deposition at 45–55.)

The business of an insurance company involves settling, adjusting and handling claims. The public policy of Ohio mandates no insurer should be able to abandon his insured simply by claiming jurisdiction is "unreasonable." Ohio has a substantial interest in seeing its residents are compensated for tortious injuries occurring to them in the state by out-of-state insurers who provide necessary, albeit costly, insurance protection to manufacturers, vendors or distributors of defective products put into the stream of commerce in Ohio. *Kentucky Oaks Mall, supra; Fallang v. Hickey, supra.*

International markets and trade, along with transportation and communications, have made it much less costly and burdensome for a party sued to defend himself in a neighboring locale where he does not reside, even an international one. *Asahi, supra.* Thus, it will not be found to be unfair for Kansa to subject itself to the burden of litigating disputes in Ohio relating to economic activity contracted for by the insured in Canada since this does not offend traditional notions of fair play and substantial justice. *Asahi, supra; International Shoe Co., supra; Kentucky Oaks Mall, supra.*

Accordingly, defendant-appellant's first assignment of error is not well taken and overruled.

Defendant-appellant Kansa Insurance Company's second and third assignments of error follow:

"The trial court erred in determining that Kansa insurance policy 2000184 was in full force and effect on August 4, 1982, as a policy providing coverage

to Griffin Products, Inc., and that plaintiffs herein were insured as vendors pursuant to Endorsement 4 of the subject policy.

"A.  Griffin Products, Inc. is not an insured under the subject policy as its designation is the result of mutual mistake.

"B.  Plaintiffs are not entitled to coverage as vendors under the subject policy."

Defendant-appellant's second and third assignments of error lack merit.

Defendant-appellant argues the trial court erred specifically as follows: (1) finding Griffin Products, Inc. an insured under policy No. 2000184 since a mutual mistake existed wherein the intent was to insure only Griffin (1982) the successor company; (2) finding plaintiffs Fuqua, Dorcy and J.C. Penney were entitled to coverage as vendors pursuant to the policy; and (3) determining Kansa was obligated to provide indemnification to plaintiff-vendors pursuant to the Chace claim.  Defendant-appellant's arguments lack merit.

The construction of written contracts is a matter of law.  *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146.  The common words in an insurance policy must be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the document.  *Id.*

Only where a contract of insurance is ambiguous and therefore reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who seeks coverage and strictly against the insurer who drafts the instrument.  See *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 545 N.E.2d 83; *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488; *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus; *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.3d 56, 313 N.E.2d 844, syllabus.

In the case *sub judice*, defendant-appellant states a mutual mistake exists regarding the named insured under the policy.  Defendant-appellant contends Kansa never intended to insure the then bankrupt "Griffin Products, Inc.," but intended only to insure Griffin Products, Inc. (1982) who succeeded Griffin Products by buying its helmet assets thereby becoming a new and distinct company.

Ohio law provides reformation of a contract based upon mutual mistake is allowed only where there is clear proof that the parties made the *same mistake* and that both parties understood the contract as the complaint alleges it ought to have been.  *Merrill v. Hamilton* (1982), 9 Ohio App.3d 111,

9 OBR 174, 458 N.E.2d 860. Here, Griffin Products, Inc. and the other insureds allege no mistake. Even if reformation of the contract were warranted pursuant to this doctrine, reformation should take place prior to reliance by the insureds on the policy terms.

Kansa Insurance Policy No. 2000184 states under the declarations section as follows:

"DECLARATIONS

"*Item*

"1. NAMED INSURED: MR. MAURICE PINSONNEAULT OPERATING AS 115132 CANADA INC., AND GRIFFIN PRODUCTS, INC.

"ADDRESS: 9515 Montrose Rd., Niagara Falls, Ontario.

"2. POLICY PERIOD: From: April 23, 1982 to: February 20, 1983 12:01 A.M. Standard Time at the address of the Insured."

Thereafter, defendant-appellant argues there was a mistake in its drafting of the policy and Endorsement No. 9 indicates the intent to insure only "Griffin 1982." However, a clear reading of the purpose of Endorsement No. 9 reveals it contains an exclusion of *non-business activities* to be applied retroactively to the policy inception date, April 23, 1982, whereas Endorsement No. 10 actually amends the name of the insured effective September 24, 1982. Endorsement No. 10 is reproduced in part as follows:

"IT IS HEREBY UNDERSTOOD AND AGREED THAT THE NAME OF THE INSURED IS AMENDED TO READ AS FOLLOWS:

"115132 CANADA INC. AND/OR GRIFFIN PRODUCTS '1982' LIMITED AND/OR MAURICE PINSONEAULT PINSO SPORT LIMITED

"AND NOT AS PREVIOUSLY WRITTEN."

The judgment entry of the trial court indicates at page three, paragraph seven, "This endorsement does not change the named original insured." Construing the above language according to the plain and ordinary meaning, it is clear Endorsement No. 10 is not ambiguous and consequently not in need of construction. Furthermore, there is no proof of mistake as defendant-appellant contends since coverage for "Griffin Products Inc." has been amended to provide coverage for the new company "Griffin Products 1982" effective date September 24, 1982. From a plain reading of the policy, there is no mistake, the clear intent was to insure Griffin Products and/or Griffin Products, Inc. from the period beginning April 23, 1982 through August 4, 1982, the date of the accident to Ross Chace.

Thus, the trial court did not err in finding that at the time of the plaintiff's injury on August 4, 1982, Kansa insured "Griffin Products Inc." under policy No. 2000184. Assume *arguendo* an ambiguity in the contract existed, this court would reach the same conclusion construing the language strictly against the drafter, Kansa. *Blohm v. Cincinnati Ins. Co.* (1988), 39 Ohio St.3d 63, 66, 529 N.E.2d 433, 436; *Faruque v. Provident Life & Acc. Ins. Co.*, *supra*.

Building upon the above argument, defendant-appellant next argues the plaintiffs in the declaratory judgment action against Kansa, *i.e.*, Dorcy, Fuqua and J.C. Penney, are not entitled to coverage pursuant to the "vendor's clause"[7] of Kansa policy No. 2000184 since they were vendors of Griffin Products, Inc., *not* the successor "Griffin 1982."

Since we find, as did the trial court, the Kansa policy No. 2000184 as written did cover Griffin Products, Inc. on August 4, 1982, the date of the Chace accident, the plaintiff-vendors of Griffin Products, Inc.'s helmets are implicitly covered by Endorsement No. 4, the vendor's clause.

Accordingly, defendant-appellant's second and third assignments of error are not well taken and overruled.

Defendant-appellant Kansa Insurance Company's fourth assignment of error follows:

"The trial court erred in determining that Kansa General Insurance Co., was clearly and unambiguously obligated to provide coverage and indemnification to plaintiffs herein pursuant to the subject policy in regard to the action of Sharon Chace et al., v. Dorcy International, Inc., et al."

Defendant-appellant's fourth assignment of error lacks merit.

■ Essentially, Kansa contends that in order for plaintiff-vendors to invoke excess or secondary coverage pursuant to policy No. 2000184, they must first exhaust any primary liability insurance, if any, as a condition precedent. The record indicates the collective vendors herein, *i.e.*, Dorcy, Fuqua and Penneys, settled in case No. 077658 and judgment was entered for

---

7. Policy Endorsement No. 4 is titled "Vendor's Liability." It provides:

"It is agreed that such insurance as is afforded by the Policy with respect to the Products Hazard applies also to any person or organization as insured with respect to the distribution or sale, in the course of business of such person or organization, of goods or products manufactured, sold, handled or distributed by the Named Insured.

" 'Products Hazard' is defined on page 6 of the policy as follows:

" 'Products Hazard' means bodily injury or property damage arising out of any accident or occurrence which takes place away from the insured[']s premises due to

"(1) the consumption handling, use or existence of goods or products made, sold, handled or distributed by or for the Insured after the Insured has relinquished possession of such goods or products."

plaintiff Sharon Chace on behalf of her ward for damages in excess of $2,000,000. This judgment creates a liability to plaintiffs herein.

An appellant has the burden of showing error the trial court committed by reference to the record. *Knapp v. Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384; *State v. Skaggs* (1976), 53 Ohio St.2d 162, 7 O.O.3d 243, 372 N.E.2d 1355. A review of the entire transcript of the hearing held in which counsel for Kansa presented its concerns to the trial judge fails to indicate any reference to "other insurance" and primary or secondary coverage contained in the policy. Thus, Kansa has waived error, if any, by failing to raise said error at the trial level and exemplify this error on appeal. If Kansa thought this issue important, Kansa had an opportunity and a duty to raise this issue either at hearing or by brief and include it in the record where the trial court could address and either remedy the claimed error or preserve it for our review. *Knapp, supra.*

The "Stipulated Facts" of the two consolidated cases dated August 31, 1988 which were jointly prepared by Dorcy, Fuqua, J.C. Penney and *Kansa* state at paragraph 16 as follows:

"Notice was sent to Griffin of the *Chace* case with copies to Kansa in Toronto and Montreal. Kansa has declined to provide coverage in the underlying case."

Thus, Kansa was provided notice and every opportunity to appear and defend. In addition, Kansa was afforded every opportunity to present all issues of law and fact to the trial court without waiving its claim of lack of personal jurisdiction. Furthermore, Kansa by steadfastly refusing to submit to in personam jurisdiction of the trial court may not now complain of being deprived of "its right to participate in any settlement discussion" since it waived this right. See, *e.g., Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555.

We must therefore presume regularity and affirm the trial court's decision, entering judgment for plaintiffs for $1,000,000 policy limits against Kansa from liability incurred from settlement and judgment with Chace for over $2,000,000.

Accordingly, defendant-appellant's fourth assignment of error is not well taken and overruled.

Defendant-appellant Kansa Insurance Company's fifth and sixth assignments of error follow:

"The trial court erred in determining that it had the authority to enter a money judgment for indemnity in this declaratory judgment action and by

ordering payment of indemnity plus attorney's fees, costs and interest based on plaintiffs' settlement of the Chace action.

"A. The court below lacked the authority to enter a money judgment.

"1. A declaratory judgment action cannot be utilized to deprive Kansa of its rights under the direct action statute.

"2. The declaratory judgment act does not permit the form of incidental relief applied below.

"B. Settlement of the Chace action does not justify an order of indemnity and costs."

Defendant-appellant contends the trial court erred in two respects: (1) the trial court lacked authority to enter a money judgment of $1,000,000 in a declaratory judgment action; and (2) the trial court lacked authority to order Kansa to pay interest, attorney fees and costs.

■ The entertainment of a declaratory judgment action rests within the sound discretion of the trial court. *Schaeffer v. First Natl. Bank* (1938), 134 Ohio St. 511, 13 O.O. 129, 18 N.E.2d 263. Accordingly, we are required to determine whether the trial court abused its discretion, which implies more than an error in judgment, but connotes "an unreasonable, arbitrary or unconscionable attitude on the part of the trial court." *Lee v. Jennings Transfer Co.* (1967), 14 Ohio App.2d 221, 43 O.O.2d 452, 237 N.E.2d 918.

■ The Declaratory Judgments Act was fashioned to provide remedies where none exist in the situation where a particular controversy has not advanced to the point where a conventional remedy is reasonably available. *Murray v. McCrystal* (1955), 99 Ohio App. 441, 59 O.O. 194, 134 N.E.2d 88.

R.C. 2721.02 provides as follows:

"Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declaration has the effect of a *final judgment or decree*." (Emphasis added.)

Furthermore, R.C. 2721.03 and 2721.04 provide questions regarding contract construction and obligations thereunder may be brought in a declaratory judgment action so a party may "obtain a declaration of rights, status, or other legal relations thereunder." R.C. 2721.03.

Importantly, the legislature granted ancillary power to the courts hearing declaratory judgment actions providing in R.C. 2721.09 as follows:

*"Whenever necessary or proper, further relief based on a declaratory judgment* or decree previously granted *may be given.* The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith." (Emphasis added.)

Kansa was given the opportunity to appear at trial court hearings, before final judgment was rendered, without waiving its defense of lack of personal jurisdiction and argue each point of law it deemed appropriate.

This court has held in *Jeppe v. Blue Cross* (1980), 67 Ohio App.2d 87, 21 O.O.3d 406, 425 N.E.2d 947, that while there exists no express statutory provision for granting a money judgment in a declaratory judgment action, such relief may nonetheless be granted so long as two conditions are met: (1) the prayer for relief must contain either an express request for money judgment or one which *could be construed as such;* and (2) any judgment rendered must before execution be for a *specific amount* of money and specify the amount to be recovered. *American Life & Accident Ins. Co. v. Jones* (1949), 152 Ohio St. 287, 40 O.O. 326, 89 N.E.2d 301; *Roach v. Roach* (1956), 164 Ohio St. 587, 59 O.O. 1, 132 N.E.2d 742 (other citations listed in *Jeppe* omitted). In *American Life, supra,* the Supreme Court endorsed the payment of a money judgment in a declaratory judgment action albeit based upon the G.C. 12102–8 which provided in part:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief."

Clearly the language and legislative intent of G.C. 12102–8 was perpetuated with the passage of R.C. 2721.09 which contains similar language.

Furthermore, where an insurer resorts to delaying tactics, fails to defend and takes a litigious course of conduct which the insured hardly bargained for, the trial court has the discretion to allow expense, costs and attorney fees. *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874.

Plaintiffs' prayer for relief in their complaint against Kansa requested a determination that Kansa was liable to indemnify them to the $1,000,000 policy limits, which clearly was and could be construed as an express request for judgment in that amount. See *Jeppe, supra.* Plaintiffs' prayer included the desire of exercising judicial economy and avoiding a multiplicity of lawsuits. In addition, plaintiffs made an express request for their attorney

fees and costs expended on behalf of their defense of the Chace claim and declaratory judgment action.

The court stated in *G.S.T. v. Avon Lake* (1978), 59 Ohio App.2d 84, 89, 13 O.O.3d 142, 145, 392 N.E.2d 901, 905, as follows:

" * * * Subject to the limitation that the court must first find evidence of bad faith or fraud, or a *stubborn propensity to needless litigation on the part of the defendant party,* a court in its inherent power under R.C. 2721.09 may assess the opponents reasonable attorney fees and costs against him." (Emphasis added.)

The trial court thereafter entered judgment against Kansa and for plaintiff-vendors for (1) money judgment of "$1,000,000 of the approximate $2,000,000 settlement and judgment" (conclusions of law at paragraph 8); (2) expenses incurred by plaintiffs, Griffin Products (1982) Ltd., "for investigation, negotiation, defense and attorney's fees in the Chace action, in the sum of $43,216.90 in U.S. funds * * * " (conclusions of law at paragraph 9); (3) costs of this action; and (4) other expenses and plaintiffs' attorney fees as yet undetermined.

The trial court reserved the right to entertain proof of litigation costs of plaintiffs Dorcy, Fuqua and Penneys' expenses after declaratory judgment was rendered.

Thereafter on July 21, 1989 the trial court entered judgment against Kansa on all the expenses and costs of plaintiffs' litigation of the Chace claim, proof of which the court found uncontroverted and reasonable, as $175,065.84 plus interest.

The trial court found Kansa insured Griffin Products, Inc. and, through policy No. 2000184, its vendors Dorcy, Fuqua and J.C. Penney. The trial court properly concluded Kansa had a good faith obligation to defend and indemnify plaintiffs Dorcy, Fuqua and J.C. Penney, who were its insureds, and Kansa breached that duty by failing to defend and/or engage in settlement discussions, thus, requiring the trial court order interest, attorney fees and costs be paid by Kansa. See *Liberty Mut. Ins. Co. v. Allstate Ins. Co.* (1985), 16 Ohio St.3d 8, 16 OBR 259, 475 N.E.2d 477; *Willoughby Hills, supra,* syllabus; *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315.

Accordingly, defendant-appellant's fifth and sixth assignments of error are not well taken and overruled.

Defendant-appellant Kansa Insurance Company's seventh and eighth assignments of error follow:

"The trial court erred in determining that the subject policy's monetary limits were based on American dollars and failed to recognize that all issues of contract formation, interpretation, and application were governed by Canadian law."

Defendant-appellant's seventh and eighth assignments of error lack merit.

Defendant argues the trial court erred in determining Ohio law controlled the controversy and that monetary judgment be based upon American dollars when Kansa is a Canadian company. Defendant's argument is unpersuasive.

Importantly, Kansa's insurance policy No. 2000184, issued to Griffin Products, Inc. contains *no choice of law clause.* Since the tort to Chace from the defective helmet occurred in Ohio and plaintiff-vendors, Dorcy, Fuqua and Penneys, were required to defend in Ohio, Ohio law clearly would apply. *Sekeres v. Arbaugh* (1987), 31 Ohio St.3d 24, 31 OBR 75, 508 N.E.2d 941. Application of Ohio law is consistent with public policy for the following reasons: (1) Ohio is the home state of Chace, the injured party who wore a defective helmet; (2) the helmet was purchased in Ohio; (3) Ohio has a greater material interest in the determination of the issue; and (4) Ohio is the state whose law would be applied in the absence of a choice by the parties. See, *e.g., Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683.

After determining Ohio law controls, defense presents the following issue for resolution: In which currency should the dollars awarded to plaintiffs be paid, *i.e.,* Canadian or American. It is uncontested that plaintiff-vendors herein have sustained liability to Chace in excess of $2,000,000. These are American dollars.

As we previously stated, ambiguities in a contract which are subject to more than one interpretation will be strictly construed against the insurer, who drafts the contract and has the better opportunity to correct such conflicts. See *Burris v. Grange, supra; Faruque, supra.*

The judgment entered by the trial court of one million American dollars is a perfectly logical outcome since the Chace settlement set forth over two million in American dollars. Payments are being made to plaintiffs in American currency. Furthermore, the contract of insurance could easily have been drafted to state the currency which applied, *e.g.,* Canadian or American. The general rule in deciding which currency to use when honoring an obligation in currency which bears the same name but has different values seems to be that payment is made in the currency of the country where payment is due. *Liebeskind v. Mexican Light & Power Co.* (C.A. 2, 1941), 116

F.2d 971; *Mountain Lumber Co. v. Davis* (S.D.N.Y.1925), 9 F.2d 478. The Chace claim is due and presently being paid in American dollars.

Since Kansa, a Finnish company, knew the vendor's clause would logically apply to distributors and sellers both nationally and internationally, within and outside Canada, the contract is construed strictly against Kansa. Thus, the trial court did not err in holding payment was due plaintiff-vendors in American dollars.

Accordingly, defendant-appellant's seventh and eighth assignments of error are not well taken and overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PARRINO, J., concurs.

MATIA, J., concurs in judgment only.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.