JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant, Grange Mutual Casualty Company ("Grange"), appeals the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Progressive Max Insurance Company ("Progressive"). For the reasons stated below, we find merit to this appeal and reverse the decision of the trial court.
 I. {¶ 2} On May 2, 1998, Jonathan Cain ("Cain") was operating a rented 1989 Dodge Dynasty that was owned by William Reed, dba Reed's Motor Sales (referred to as "Reed" or "RMS," respectively), when he was involved in a motor vehicle accident. Cain's primary vehicle was inoperable due to an accident that took place sometime prior to May 2, 1998. At the time of the accident, Cain maintained an automobile liability insurance policy with Progressive.[1] Reed maintained a commercial auto coverage/garage coverage policy of insurance with Grange.[2]
 {¶ 3} Progressive paid a total of $17,908.59 to various claimants for their bodily injury and property damage claims arising from the accident. Following the accident, Progressive brought an action against Grange seeking reimbursement for the monies paid on Cain's behalf. Specifically, Progressive sought declaratory judgment regarding coverage under the respective policies and compensatory damages.[3] The parties filed motions for summary judgment on their claims for declaratory judgment.
 {¶ 4} On July 22, 2002, the trial court granted Progressive's motion for summary judgment and denied Grange's motion for summary judgment, with opinion. The trial court found that "defendant Grange has an obligation to provide primary insurance coverage to the tortfeasor Cain in this incident." It is from this judgment that Grange advances one assignment of error.
 II. {¶ 5} In its sole assignment of error, Grange argues that "[t]he trial court erred by granting summary judgment to plaintiff, and should have granted defendant's motion for summary judgment."
 III. {¶ 6} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 7} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330. The record on summary judgment must be viewed in the light most favorable to the opposing party. Williams v. First United Church ofChrist (1974), 37 Ohio St.2d 150.
 {¶ 8} In moving for summary judgment, the "moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280. Thereafter, the nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id. A motion for summary judgment forces the plaintiff to produce probative evidence on all essential elements of his case for which he has the burden of production at trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330. Plaintiff's evidence must be such that a reasonable jury might return a verdict in his favor. Seredick v. Karnok (1994),99 Ohio App.3d 502.
 {¶ 9} This court reviews the lower court's granting of summary judgment de novo. Ekstrom v. Cuyahoga County Community College, Cuyahoga App. No. 81501, 2002-Ohio-6228.
 IV. {¶ 10} In support of its position that they are under no obligation to reimburse Progressive, Grange presents three arguments. Grange argues: 1) driving a leased vehicle from Reed is excluded from liability coverage under the Grange policy; 2) even assuming that Cain is entitled to coverage under the Grange policy, Cain breached the insurance contract, which precludes coverage; and 3) even assuming Cain is entitled to coverage under the Grange policy, Progressive acted as a volunteer and waived, or is estopped from asserting, any right of contribution, indemnity or subrogation against Grange.
 {¶ 11} Regarding its first position, Grange does not dispute that the vehicle involved in the accident was a "covered auto" under its policy. However, because the vehicle was rented, an exclusion of coverage is triggered. Specifically, "Section II — Liability Coverage" of the "Garage Coverage Form" provides the following:
"B. EXCLUSIONS
 "This insurance does not apply to any of the following:
 "* * *
 "7. LEASED AUTOS
 Any covered `auto' while leased or rented to others. But this exclusiondoes not apply to a covered `auto' you rent to one of your customerswhile their `auto' is left with you for service or repair."
 {¶ 12} Grange argues that Cain did not rent the Dodge Dynasty while his vehicle was left for repairs; therefore, the "service or repair" exception to this exclusion does not apply. Progressive argues that Cain was a customer.[4]
 {¶ 13} Progressive further relies on an endorsement to the policy[5] that sets forth a broader definition of who is an insured, namely:
"WHO IS AN INSURED
 "1. For Covered `Autos.'
 "a. You are an `insured' for any covered `auto.'
 "b. Anyone else is an `insured' while using with your permission acovered `auto' except:
 "1. The owner of a covered `auto' you hire or borrow from one of youremployees or a member of his or her household.
 "2. Someone using a covered `auto' while he or she is working in abusiness of selling, servicing, re-pairing or parking or storing `autos'unless the business is your `garage operations.'
 "c. Your customers, if your business is shown in ITEM ONE of thedeclarations as an `auto' dealership, but only up to the compulsory orfinancial responsibility law limits where the covered `auto' isprincipally garaged."
 {¶ 14} The trial court found that Cain qualified as an insured under 1(b) and (c). We respectfully disagree.
 {¶ 15} Progressive admits that Cain's vehicle was not at RMS for servicing following his earlier accident. Progressive argues that the endorsement modifying the Garage Coverage Form broadened the definition of who is an insured to such an extent that it conflicts with the exclusion. That being the case, any conflict between the general policy and the terms of an endorsement, the terms of the endorsement controls.Baker v. Aetna Cas. Sur. Co. (1975), 107 Ohio App.3d 835.
 {¶ 16} Insurance policies are generally interpreted by applying rules of contract law. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured.Hionis v. Nationwide Ins. Co., Cuyahoga App. No. 80516, 2003-Ohio-1333. When the policy terms have a plain and ordinary meaning, it is not necessary or permissible for a court to construe a different meaning. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. Id.
 {¶ 17} We have held that the "common words in an insurance policy must be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the document. Only where a contract of insurance is ambiguous and, therefore, reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who seeks coverage and strictly against the insurer who drafts the instrument." Chace v. Dorcy Int'l, Inc. (March 4, 1991), Cuyahoga App. Nos. 58021-22, 58197-98, 68 Ohio App.3d 99. Furthermore, "exclusions or exceptions must be expressly provided or must arise by necessary implication from the policy language." Bonanza of Cleveland, Inc. v.Fairfax Underwriters Services (December 28, 1991), Cuyahoga App. No. 43563, 5 Ohio App.3d 190.
 {¶ 18} According to the Garage Coverage Form, CA 00051293, Section II(B)(7), coverage is not available while the covered auto is leased or rented, unless the customer to whom the covered auto was rented needed it while his primary vehicle was left for service or repair. Progressive argues that the Ohio Garage Liability Coverage Changes, CA 01450394, lists an insured as "anyone else" using a covered auto with permission. Because Cain rented the vehicle from RMS, the lease/rental exclusion became operative. Had RMS permissively given the covered auto to Cain, by not renting the vehicle, arguably then the "anyone else" provisions of the policy would have controlled.[6]
 {¶ 19} In the case sub judice, the policy clearly states that the coverage applies only when the vehicle was "rent[ed] to one of your customers while their `auto' is left with you for service or repair." The vehicle was rented to Cain, but not while Cain's vehicle was being serviced or repaired. Although the endorsement broadens the definition of who is an insured, it does not rule void the clearly worded exclusion contained in section (B)(7). There is nothing doubtful, uncertain, or ambiguous about the exclusion. Hionis, supra.
 {¶ 20} Similarly, coverage also does not arise under Section 1(c). This section details customers as insureds should the business be listed as an "auto" dealership. Here, RMS is listed as "non-franchised dealer." Although we decline to review this semantic difference, the leased auto exclusion would still preclude coverage. Section B(7) applies to customers who rent or lease a covered auto while their primary vehicle is under service or repair. Section 1(c) details the insurance coverage that would attach to such customers. This broadened definition does not remove the effectiveness of the rental/lease exclusion.
 {¶ 21} Having found that the exclusion should have been applied in this case, the decision of the trial court is reversed. Grange was under no obligation to provide primary insurance coverage.
Judgment is reversed and remanded.
PATRICIA A. BLACKMON, P.J. and SEAN C. GALLAGHER, J. concur.
[1] Policy No. 40559109-1.
[2] Policy No. GLA2040578.
[3] On July 27, 2001, Progressive voluntarily dismissed its claims for compensatory damages pursuant to Civ.R. 41(A).
[4] Cain's wife, Angel Cain, was employed by Reed's wife and worked in the same location as RMS. Reed drove Angel home the day Cain was discussing his previous accident with the insurance company. Reed offered to provide Cain a temporary vehicle and negotiated the terms of this deal on the phone with the insurance company. It is from these facts that Progressive finds Cain to be a customer, thereby triggering the Grange's policy of insurance.
[5] Ohio Garage Liability Coverage Changes, CA 01450394.
[6] The court notes that under the Garage Coverage Form, CA 00051293, Section II(A)(1)(a)(2), an insured is also listed as "[a]nyone else while using with your permission a covered `auto' you own, hire, or borrow except * * *." The Ohio Garage Liability Coverage Changes Form, Section 1(b), to which Progressive relies, provides that "[a]nyone else is an `insured' while using with permission a covered `auto' except * * *." The "anyone else" provisions do nothing to remove the rental/lease exclusion under the policy.