**DETROIT AUTOMOBILE INTER–INSURANCE EXCHANGE, a reciprocal inter-insurance exchange, Plaintiff,**

v.

**Richard Louis FEYS, a minor, Donald C. Feys and Florence M. Feys, his wife, Laura Etta Buchholz, Gerald L. Davenport, State Farm Mutual Auto Insurance Company, et al., Defendants.**

No. 38691.

United States District Court
N. D. California, S. D.
May 22, 1962.

Charles H. Brock of Hoge, Fenton, Jones & Appel, San Jose, Cal., for plaintiff.

Richard Louis Feys and Gerald L. Davenport, pro. per.

Leighton Bledsoe, of Bledsoe, Smith, Cathcart, Johnson & Phelps, San Francisco, Cal., for defendants Laura Etta Buchholz and State Farm Mut. Auto. Ins. Co.

WOLLENBERG, District Judge.

This is an action for a declaratory judgment. Jurisdiction is based on diversity of citizenship; and as the contract of insurance was written and performed in Michigan, the law of Michigan is controlling.

Plaintiff, Detroit Automobile Inter-Insurance Exchange, seeks in this action to have it determined that it is not obligated to defend a personal injury action brought by a woman injured by the son of its insured. Plaintiff issued a policy of automobile liability insurance to Donald C. Feys, the father of Richard Louis Feys, in November, 1957. In March, 1959, the son of the insured, while in the Navy and stationed in California, was operating a vehicle owned by Gerald L. Davenport, when the vehicle was involved in an accident with a vehicle owned and operated by Laura Etta Buchholz. The accident occurred in California. Laura Buchholz was injured in that accident and brought an action for her injuries against Richard Feys and Gerald Davenport. Plaintiff has declined to defend any action against either Feys or Davenport and now seeks a determination that Mrs. Buchholz should look to her own insurer, State Farm Mutual Auto Insurance Company, for her compensation.

In its policy issued to Donald Feys, plaintiff agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by any person;

\* \* \* \* \* \*

"arising out of the ownership, maintenance or use, including the loading or unloading thereof, of the owned automobile or of any non-owned automobile, and the Exchange shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if the allegations of such suit are groundless, false or fraudulent, but the Exchange may make such investigation and settlement of any claim or suit that it deems expedient.

\* \* \* \* \* \*

"The following are insureds under Section I:

\* \* \* \* \*

"(b) with respect to a non-owned automobile used with the permission of any person having the right to grant it, and providing the automobile described in the declarations is classified as 'pleasure and business',

\*    \*    \*    \*    \*    \*

"(2) any relative of such named insured with respect to the use of an automobile or trailer not regularly furnished for the use of such relative;

\*    \*    \*    \*    \*    \*

"(c) 'relative' means a relative of the individual insured named first in Item 1 of the declarations, if a resident of the same household;"

The issues raised at bar are whether or not the insured's son, at the time of the accident, was "a resident of the same household" of the insured; and whether or not the car loaned to the insured's son was "regularly furnished" for his use.

■ The evidence shows that when the policy was issued, Richard Feys was 17 years old and lived at home in Farmington, Michigan with his parents and four brothers. In February, 1958, he left school and joined the Navy a month later. Prior to joining the Navy, Richard had been a constant problem to the family. He had attended ten schools in the past ten years, had begun to run around with an undesirable group, and in general assumed no responsibilities to either himself or his family.

His father, who felt Richard was a bad influence on his younger brothers and was disrupting the family, told him that he would either have to finish school, go to work, or join the service. He further told Richard he would prefer that he finish school and live at home. When Richard decided to join the Navy his father told him that he was always welcome to live at home and that he hoped he would return to the family after his service in the Navy.

While in the Navy, the evidence further shows Richard considered his family residence still his home. He left his belongings there, returned to the family on two 15-day leaves and one 30-day leave, stayed in his old room, and intended to return home after his service in the Navy was completed.

It is evident from the facts presented that both father and son considered the family home in Michigan to be Richard's residence. Even though he was in the service, he considered himself, as did his father, a resident of the household. This the Court so finds.

■ The term "resident" while often used synonymously with "domicile", generally requires something less than domicile. It is a word of many shades of meaning and the context in which it is found is important to determine its meaning. Residence is a privilege, unlike domicile, and one can have several residences if he chooses. See generally, 17 Am.Jur. 201, Domicile Sec. 9 (1957).

■ The same applies to a person in military service. As his quarters on base are not the result of his own volition, it is to be assumed that he retains his old residence and domicile until a different intention is apparent. See Raymond v. Century Indemnity Company, 264 Wis. 429, 59 N.W.2d 459 (1953).

■ Plaintiff argues that since "relative" is defined to exclude minors in the military service in the medical payments coverage section of the policy, it therefore should exclude them in the section in question at bar. This argument is untenable. It is obvious that the intent there, and rightfully so, is to prevent double coverage where care is given free by the military. It has nothing to do with a separate and distinct inclusionary section defining insureds.

■ And if it is true, as plaintiff argues, that the policy was not intended to be applicable outside of Michigan, where its rates were based, plaintiff must make that intention clearly known if it is not specifically set out in the policy. Sperling v. Great American Indemnity Company, 7 N.Y.2d 442, 199 N.Y.S.2d 465, 166 N.E.2d 482 (1960).

The question of whether or not the automobile was "regularly furnished", is a factual question and the test appears to be the right to use, rather than actual use. Rodenkirk, for Use of Deitenbach v. State Farm Mutual Auto Insurance Company, 325 Ill.App. 421, 60 N.E.2d 269 (1945). The purpose of this type of clause is to cover infrequent or casual use and to exclude frequent use or the opportunity for frequent use. Farm Bureau Mutual Automobile Insurance Company v. Marr (D.C.N.J. 1955), 128 F.Supp. 67; Aler v. Travelers Indemnity Company (D.C.Md.1950), 92 F.Supp. 620 at 623. There appears to be no Michigan case on point.

The evidence shows that about one week before the accident, Davenport, the owner, went to the hospital. His car needed rewiring, and Richard agreed to do it. There was no discussion as to when Richard could use the car, but as it was parked off base, and the work was to be done at the hobby shop on base, impliedly Richard had permission to use the car.[1] There was no express consent for Richard to use the car for his "regular use" and as the night of the accident was the first time that Richard used it, other than to work on it, there appears to be no implied consent to its "regular use". Nor does it appear from the facts that there was opportunity for frequent use.

It is the opinion of the Court that plaintiff's policy of insurance in controversy in this case does insure defendant Richard Feys; and therefore, it is ordered and decreed that plaintiff is not entitled to a declaratory decree denying coverage. It is the further opinion of the Court that plaintiff's policy in controversy does not insure defendant Davenport and that plaintiff is entitled, as to Davenport, to a declaratory decree denying coverage. The foregoing judgment shall be considered the fulfillment

of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., and be findings of fact and conclusions of law.

Let judgment be entered accordingly, plaintiff to bear costs of suit.

[1] However, it should be noted that this provision is, by its terms, "concerned with regularity of use, and not permissiveness of use". See Sperling v. Great American Indemnity Company, supra.