ROSE, Appellee,

v.

**NATIONAL MUTUAL INSURANCE COMPANY**
**et al.; Westfield Companies, Appellant.**

[Cite as *Rose v. Natl. Mut. Ins. Co.* (1999), 134 Ohio App.3d 229.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 97 BA 48.

Decided Aug. 30, 1999.

232

*Charles H. Bean,* for appellee.

*Isaac, Brant, Ledman & Teetor* and *Steven G. LaForge,* for appellant.

WAITE, Judge.

This appeal arises out of a trial court decision granting appellee Kyle Rose's motion for summary judgment against appellant, Westfield Companies, awarding appellee $200,000 plus prejudgment and postjudgment interest from the date of the accident, and subsequently overruling appellant's motions for reconsideration and summary judgment. For the following reasons, this court affirms the trial court judgment.

In January 1990, appellee's mother and father, Linda Fuchs (formerly Linda Rose) and David Rose, had their marriage dissolved. The court awarded custody of appellee and his two siblings to Linda Fuchs, and they remained in the family home. In the fall of 1990, appellee began college at Mercer University in Georgia and stayed there in a college dormitory during the school year but came home for holidays and school vacations. In the summer of 1991, appellee came home for summer break and returned to school in the fall.

In October 1991, while appellee was away at school, his mother moved in with her parents in Clarington, Ohio, and put the family home up for sale. Fuchs moved all of her and her children's belongings, including appellee's, into her parents' house. An unfinished garage was converted into a bedroom for appellee and his brother Casey to stay in when they returned from college. It was to his grandparents' residence that appellee returned when he came home for the Thanksgiving break in November 1991.

On December 14, 1991, appellee and Casey returned home from college on Christmas break. They visited their father and then drove to their maternal grandparents' house, where their mother was also residing, to drop off their belongings and have dinner. Appellee was driving a car given to him by his father for his use while at college. While appellee and his brother were out that evening, appellee went to a local bar, where he met an acquaintance, Renee Brown. Appellee was inside Brown's car talking when Brown began to drive after another friend. Brown subsequently lost control of her car. Ms. Brown was killed in the accident, and appellee suffered a severed spinal column, resulting in permanent paraplegia.

On December 8, 1993, appellee filed a declaratory judgment action to determine his rights against certain insurance companies that were at the time insuring Brown, his mother, his father, and his maternal grandparents. Appellee represented that he had received the liability limits of $100,000 from Brown's insurance company, the National Mutual Insurance Company ("NMIC"), but had also requested medical payments from the policy. Appellee also sought uninsured/underinsured motorist coverage under his father's policy with appellant and sought recovery under the uninsured/underinsured motorist provisions of his

mother's insurance policy with Great American Insurance Companies (Eagle American Insurance Company) ("GAIC"). All of these claims were either settled or dismissed by judgment entry. The procedural posture of these claims will not be further addressed except as necessary.

Relevant to the present appeal, appellee also sought the limits of the uninsured/underinsured motorist provisions under a policy of insurance issued by appellant to appellee's maternal grandparents. Appellee alleged that at the time of the accident, he was a resident of his grandparents' household and had complied with all of the policy provisions entitling him to the underinsured motorist policy limits. Appellant denied the claim. Appellee requested declaratory judgment in his favor, seeking the policy limits of $200,000 plus interest and costs against appellant.

Appellee asserted in his complaint that as a result of the automobile accident, he had incurred medical expenses in excess of $400,000 to date. Appellee attached copies of the relevant insurance policies. Excluded from his attachment was the maternal grandparents' policy, as appellee alleged that it was identical to his father's policy with appellant, which was attached.

On January 6, 1994, appellant filed an answer addressing the claims against its uninsured/underinsured motorist provisions under both appellee's father's and maternal grandparents' policies. Appellant generally denied the allegations in the complaint but admitted that appellee had suffered a severed spinal column and that expenses had been incurred as a result. Appellant denied for lack of knowledge the alleged amount of the expenses. Appellant also admitted that appellee "was a member of some household which included Linda Rose, his mother, and his grandparents, Vernon N. Kanzigg and Twila M. Kanzigg, in the Village of Clarington, Ohio." Appellant initially denied that the terms of the maternal grandparents' and the father's policies were the same but later agreed that they were. Appellant demanded a trial to the court to determine the rights of the parties.

On August 26, 1996, appellee filed an amendment to his demand for judgment, requesting, among other relief, judgment in the amount of $200,000 plus prejudgment and postjudgment interest and attorney fees and costs against appellant under his grandparents' policy.

On August 27, 1996, appellee filed a motion for summary judgment against both appellant and GAIC. The parties agreed to continue the matter against GAIC pending settlement negotiations. Appellee asserted that he was entitled to judgment against appellant as a matter of law because he met the definition of "insured" under appellant's policy, a copy of which was attached to the motion. "Insured" was defined as "you or any family member." "Family member" was

defined as a "person related to you by blood, marriage or adoption, who is a resident of your household."

Appellee asserted that he was a family member and therefore an insured because he was unquestionably related by blood to his maternal grandparents and was also a resident of their household. Appellee submitted that as the term "resident" was not defined in the policy, it was ambiguous and should therefore be construed against appellant and in his favor. Appellee set forth caselaw rejecting the definition of "resident" as it refers to domicile and holding that one who lives in the home of the named insured need not live there permanently but must not be a temporary or transient visitor. *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 528 N.E.2d 968. Appellee contended that he was a resident of his grandparents' home because his mother lived there and he had lived with his mother all of his life, his belongings were kept in a garage converted into a bedroom for his use when he was home from college, and he returned to his grandparents' home during all holidays and school vacations. Appellee also cited caselaw holding that a college student is not considered to be a resident, in the permanent sense, of his school habitation. Appellee alternatively asserted that appellant should be estopped from denying coverage because appellant's answer to his complaint admitted that appellee was a resident of the household and appellant's claims examiner believed appellee to be an insured, as she repeatedly requested authorization to pay the policy limits to appellee after her investigation. Appellee further argued that he should be able to collect attorney fees, costs, and prejudgment and postjudgment interest from the date of the accident for appellant's failure to pay appellee's claim.

Appellant submitted nothing in response to appellee's motion for summary judgment. On September 23, 1996, the court held a hearing on the summary judgment motion. Counsel for appellant was present at this hearing. Appellant's counsel indicated at the hearing that it had not responded to the motion and that it had no other issues or other matters to raise before the court. On September 24, 1996, the trial court issued its entry summarily sustaining appellee's motion for summary judgment against appellant.

On October 24, 1996, appellant filed an appeal of the trial court's judgment entry. On the same date, appellee's attorney filed a motion seeking approval of a proposed judgment entry granting the motion for summary judgment. The court signed the judgment entry. The judgment entry stated that the motion for summary judgment was pending before the court and that appellant had filed nothing in opposition. The entry also stated that appellee was entitled to the $200,000 limits of the uninsured/underinsured motorist policy, prejudgment and postjudgment interest in the amount of ten percent from the date of the accident,

attorney fees, and court costs. The entry further provided that the case against GAIC was continuing.

While its appeal was pending, appellant filed a motion for reconsideration and its own motion for summary judgment in the trial court. These were filed on December 3, 1996. Appellant argued that the court had inherent authority to reconsider its grant of summary judgment, since the claim against GAIC was still pending under identical facts. Appellant cited caselaw and asserted that appellee was not a resident of his grandparents' household pursuant to the policy, because he stayed there only on breaks from school and he and his mother intended to live there only until his mother sold her house. Appellant also raised for the first time the argument that its policy language contained an excess-insurance clause and an other-insurance clause limiting the stacking of uninsured/underinsured motorist coverages. Appellant argued that the court could not award a monetary judgment in this declaratory judgment action because the original complaint did not seek damages. For this reason, appellant also argued that prejudgment interest could not be awarded and that in any event, it could not be awarded without a hearing. Appellant also asserted that it was entitled to a jury trial on the issue of damages.

On December 24, 1996, appellee filed a memorandum in opposition to appellant's motions for reconsideration and summary judgment, contending that appellant had waived all of the issues raised on reconsideration by not filing a responsive brief to his original motion for summary judgment, by not raising the issues at the hearing on the motion for summary judgment, and by stating to the court at that hearing that no other issues needed to be addressed. Appellee also reiterated his original assertions as set forth in his motion for summary judgment.

On December 30, 1996, the trial court issued an entry summarily overruling appellant's motions for reconsideration and summary judgment.

On May 12, 1997, this court issued a journal entry *sua sponte* dismissing appellant's notice of appeal. We held that the lower court entry was not a final appealable order because it indicated that the claim against GAIC was still pending and did not contain the language required by Civ.R. 54(B) to qualify as a final appealable order.

On August 8, 1997, the trial court dismissed with prejudice appellee's claims against GAIC due to settlement of the matter. On September 2, 1997, appellant filed an appeal from the judgment entries of September 24, 1996, October 24, 1996, and December 30, 1996, and indicated that the matters had become final and appealable orders on August 8, 1997, when all claims were dismissed against GAIC.

Appellant presents three assignments of error but argues four issues in the body of its brief relating to these three assignments. Appellant's first assignment of error states:

"The trial court erred in granting plaintiff's motion for summary judgment (docket entry, September 24, 1996)."

Appellant's second assignment of error states:

"The trial court erred in overruling the defendant Westfield National Insurance Company's motion for reconsideration (docket entry, December 31, 1996)."

Appellant's third assignment of error asserts:

"The trial court erred in failing to grant defendant Westfield National Insurance Company's motion for summary judgment (docket entry, December 31, 1996)."

Appellant's statement of the issues for review detail the following issues and the assignment of error to which each issue pertains:

"I. Did the trial court err in granting plaintiff's motion for summary judgment, and coincidentally find that the plaintiff was an insured under his grandmother's automobile insurance policy, when the factual record supported a finding that the plaintiff was not a resident of the household of his grandmother, as he was staying there temporarily? (Assignment of Error 1.) (Assignment of Error 3.)

"II. Did the trial court err in failing to reconsider its prior grant of summary judgment, when the antistacking language of the grandmother's automobile insurance policy issued by defendant Westfield National Insurance Company clearly and unambiguously limited the plaintiff's right of recovery? (Assignment of Error 2.)

"III. Did the trial court violate the defendant's constitutional right to a jury trial by granting a money judgment? (Assignment of Error 1.) (Assignment of Error 2.)

"IV. Did the trial court err in granting prejudgment interest without the necessity of the plaintiff filing a motion and the court holding a hearing? (Assignment of Error 1.) (Assignment of Error 2.)"

It bears repeating that appellant did not respond to appellee's motion for summary judgment to address the very issues of which it now complains and failed to raise any of these issues at the hearing on this motion. Appellant's counsel was present at that hearing, confirmed that no response to the summary judgment motion had been filed, and merely indicated that the residency issue was disputed. Appellant's counsel continued, "I think that's all the issues." Instead of responding to appellee's motion for summary judgment, appellant

waited almost three months after the initial grant of that motion by the trial court and then filed a motion for reconsideration and a motion for summary judgment, which addressed the issues on which the court had already ruled. While appellant immediately attempted to file an .interlocutory appeal of the summary judgment, appellant was also belatedly seeking a second bite of the apple for its failure to respond to the summary judgment motion by addressing those same issues through a motion for reconsideration and a motion for summary judgment in the trial court.

With this history in mind, we address the specific issues presented on appeal. Appellant asserts that the trial court erred in granting summary judgment and in overruling its motion for reconsideration on the issue of appellee's residency. Appellant argues that the court could not have ruled that appellee was a resident of his grandparents' home, because genuine issues of material fact existed as to this issue. Appellant cites *Shear v. W. Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 11 OBR 478, 464 N.E.2d 545, and *Napier v. Banks* (1969), 19 Ohio App.2d 152, 48 O.O.2d 263, 250 N.E.2d 417, as support for its claim that appellee was, in fact, not a resident of his grandparents' home. Appellant argues that because the living situation of appellee's mother is similar to the facts of *Napier, supra,* the court should have concluded that appellee was only a temporary resident of his grandparents' household and therefore not entitled to coverage.

▮▮▮ While we review the record *de novo* and apply the same standard used by the trial court in reviewing the grant of summary judgment, *Dinsio v. Occidental Chem. Corp.* (1998), 126 Ohio App.3d 292, 710 N.E.2d 326, citing *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1342–1343, appellate review is limited to the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion. *Christe v. GMS Mgt. Co.* (1997), 124 Ohio App.3d 84, 88, 705 N.E.2d 691, 693, quoting *Am. Energy Servs., Inc. v. Lekan* (1992), 75 Ohio App.3d 205, 208, 598 N.E.2d 1315, 1317. Thus, we cannot consider the new materials presented in appellant's motion for reconsideration in determining whether the court erred in granting summary judgment.

On summary judgment, the movant has the initial burden of informing the trial court of the basis for its motion and must point to evidence of the type outlined in Civ.R. 56(C) to show that the opposing party has no evidence to support its claims. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1170–1171, quoting *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. Once the movant meets this burden, the opposing party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts that demonstrate that a genuine issue for trial exists and "[i]f the nonmovant does not so respond,

summary judgment, if appropriate, shall be entered against the nonmoving party." *Vahila,* 77 Ohio St.3d at 429, 674 N.E.2d at 1171.

The Ohio Supreme Court has held that "the lack of a response by the opposing party cannot, of itself, mandate the granting of summary judgment." *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904, 907. Nevertheless, the court did find that "even where the nonmoving party fails completely to respond to the motion, summary judgment is improper unless reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party." *Id.* In *Kimble v. Troyan* (1997), 124 Ohio App.3d 599, 707 N.E.2d 1, this court found that the trial court committed reversible error when it failed to grant a motion for summary judgment after the nonmoving party failed to respond or produce evidentiary materials opposing the motion and no genuine issue of material fact existed on the issue.

Here the trial court correctly granted summary judgment in favor of appellee on this issue. Interpretation of an insurance contract is a matter of law, even if the policy contains undefined words. See *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686. The phrase "resident of your household" was not defined in appellant's insurance contract with the grandparents. Undefined terms in an insurance contract are to be given their plain, ordinary meaning. *Id.*

Appellee met his initial burden on summary judgment to show that he was a resident of his maternal grandparents' home and noted that the term was undefined in the insurance policy. Appellee cited *Farmers Ins. of Columbus, Inc. v. Taylor* (1987), 39 Ohio App.3d 68, 70, 528 N.E.2d 968, 969–970, which defined the term "resident" as used in the phrase "resident of your household" in an insurance policy as one who lives in the named insured's home for a period of time and while not necessarily permanently a resident, not a temporary or transient visitor. Appellee also cited *Taylor, supra,* for the holding that the named insured's residence need not be the sole or exclusive residence of the person seeking coverage as an insured.

Appellee referred to his deposition testimony that while in school he was living in a college dormitory. Appellee testified that he had always lived with his mother and that his mother moved the family into her parents' home when she moved his possessions to his grandparents' house. Appellee indicated that he was not sure whether the arrangement was temporary or permanent, but testified that he stayed there on school breaks and that the garage had been converted into a bedroom for him and his brother, furnished with two beds, a television and chair, appellee's clothes and other belongings, rugs, and curtains. Appellee's mother testified that while she did not plan on living with her parents

forever, she did consider her parents' home to be the permanent residence of her and her children and had no plans to move.

The burden then shifted to appellant to show that genuine issues of material fact existed on the issue of residency. Appellant failed to respond or otherwise meet its burden on summary judgment. Even construing the evidence in a light most favorable to appellant, this failure, coupled with the undefined term "resident" in the policy, the deposition testimony of appellee and his mother, and the caselaw supporting appellee's position, was sufficient for the trial court to determine that reasonable minds could come only to the conclusion that appellee was a resident of his grandparents' household for insurance purposes and was thus entitled to coverage. While appellant's investigator, Serena Duskey, opined at her deposition that appellee was not a resident of the home, her written reports and requests for settlement authority indicated otherwise. Reasonable minds could find that appellee was a resident of his grandparents' home based on evidence that he had lived in a school dormitory while school was in session but returned to his grandparents' house on school vacations, that he kept his possessions at the house in his own room there, and that his mother lived there, especially since he had lived with his mother all of his life and she had moved in with her parents and considered their home her permanent home at the time.

Thus, the trial court did not abuse its discretion in overruling appellant's motion for reconsideration on this issue. Appellant labeled its motion as both a motion for reconsideration and a motion for summary judgment, but no matter how styled, it was in essence a motion for reconsideration of the trial court's decision to grant summary judgment to appellee and we will treat it as such. Motions for reconsideration of civil judgments are a nullity and are not recognized in the Ohio Rules of Civil Procedure. *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 381, 21 O.O.3d 238, 239–240, 423 N.E.2d 1105, 1107–1108. Appellant correctly asserts however, that such motions are permitted as to interlocutory orders pursuant to Civ.R. 54(B). *Id.* at 379, 21 O.O.3d at 238–239, 423 N.E.2d at 1106, fn. 1. Appellant is also correct that the order of the trial court at the time the court granted summary judgment was in fact an interlocutory order, as we ruled on December 3, 1996.

While they are permitted and may be appropriate in some instances, we do not promote the filing of such motions as a substitute for a timely response in accordance with rules expressly outlined in the Ohio Rules of Civil Procedure, specifically Civ.R. 56(C) in this case. To allow a party to circumvent the rules specifically provided in the Ohio Rules of Civil Procedure and to sit on its hands and wait for a decision and then file a motion addressing issues already decided on summary judgment after that party failed to timely and properly respond would render the Civil Rules themselves a nullity.

 This being so, we will address appellant's arguments to the extent necessary. A trial court possesses plenary power in reviewing a motion for reconsideration prior to entering a final judgment. *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 706 N.E.2d 825, citing *Picciuto v. Lucas Cty. Bd. of Commrs.* (1990), 69 Ohio App.3d 789, 796, 591 N.E.2d 1287, 1292. Thus, a reviewing court will not reverse a trial court's judgment absent an abuse of discretion. *Id.* An abuse of discretion exists only where it is clear from the record that the court acted in a manner which was unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252.

Appellant asserts that the record established that appellee was not a resident of his grandparents' household because he was a temporary visitor. Appellant claims that appellee was a resident of his college dormitory and that appellee's mother did not plan to live with his grandparents' forever. As earlier stated, we cannot find upon *de novo* review that the trial court erred in granting summary judgment on this issue. Likewise, we cannot find that the trial court abused its discretion in determining that appellee was a resident of his grandparents' household, even upon review of the materials submitted by appellant for the first time in its motion for reconsideration. The case that appellant cites for determining whether appellee was a resident, *Shear, supra,* was used in appellee's motion for summary judgment. Thus, the court considered the *Shear* holding in a light most favorable to appellant when reviewing the summary judgment motion.

Additionally, we find the rationale of *Prudential Prop. & Cas. Ins. Co. v. Koby* (1997), 124 Ohio App.3d 174, 705 N.E.2d 748, applicable. In that case, the appellate court upheld a trial court's grant of summary judgment and ruled that a thirty-two-year-old captain in the United States Army stationed in Texas had a dual residency for insurance purposes, as he was a resident of his military address and a resident of his parents' household in Ohio, and thus was entitled to coverage in the form of indemnity and defense under his parents' insurance policy. *Id.* at 181, 705 N.E.2d at 752–753. The *Koby* court found:

" '[T]here [was] no requirement * * * that, in order for a person to be a resident of the named insured's household, such residence must be the *sole or exclusive* residence of the person.' (Emphasis added.)" *Id.* at 180, 705 N.E.2d at 752, quoting *Farmers Ins. of Columbus, Inc. v. Taylor, supra,* 39 Ohio App.3d at 70, 528 N.E.2d at 970.

The court further found that " '[r]esidence is a privilege, unlike domicile, and one can have several residences if he chooses. See, generally, 17 Am.Jur. 201, Domicile Sec. 9 (1957).' *Detroit Auto. Inter–Insurance Exchange v. Feys* (N.D.Cal.1962), 205 F.Supp. 42, 44." *Id.* The court also noted that at least one

court had found no practical difference between students temporarily living away from home and military personnel on assigned duty away from home for insurance purposes. *Id.* at fn. 5, quoting *Boswell v. S. Carolina Ins. Co.* (Pa.Super.1986), 353 Pa.Super. 108, 117, 509 A.2d 358, 362.

The *Koby* court found that the son had connections to his parents' home not only because of his return visits there, but also because he possessed an Ohio driver's license, had filed Ohio income tax returns, engaged in sporadic voting in Ohio, and used his parents' address as his permanent address. *Id.* at 180–181, 705 N.E.2d at 751–753. The court also listed additional factors that other courts had used such as the " 'amount of time the person spends at the household, the person's age, the person's intent, and whether the insured is "legally obligated" to the person.' " *Id.* at 178, 705 N.E.2d at 750–751, quoting *Wood v. McQueen* (Sept. 21, 1995), Cuyahoga App. No. 68472, unreported at 6, 1995 WL 558925.

Appellee in the instant matter was a twenty-year-old student living for the first time away from his mother's home in a college dormitory out of state, and while not at school was living in his grandparents' home where his mother resided. Appellee returned home on every school break and returned home to his grandparents' residence at Thanksgiving in 1991, the first vacation after his mother had moved into the residence. Appellee had left belongings at home with his mother, who took them with her when she moved in with her parents and placed them in the garage that appellee's grandparents had converted into a bedroom for his use. Appellee's mother testified that while she did not intend to stay with her parents forever, she did consider their residence her permanent home and at the time had no plans to move out and reside elsewhere. Further, appellee received mail at his grandparents' home, had a local checking account, was a registered voter in Ohio, and received living expenses and school supply money from his mother, who also cosigned on a student loan for him.

As in *Koby, supra,* we find the holding in *Malone v. Nationwide Mut. Ins. Co.* applicable:

"We are dealing here with the classic case of a young boy, venturing upon the first moments of early manhood, leaving, for a period of time, the only home he has ever known—that is, with his parents but without securing a separate residence or maintaining a household of his own. John Malone clearly evidenced every intention to return to [his parents' home] when service to his country was over, as illustrated by intermittent occasions of furlough enjoyed in the home and company of his parents. We cannot say that the concept of household incumbents [at Malone's parents' address], as calculated in numbers, had been diminished by a unit of one upon young Malone's entry into the Army. Life in the barracks is not household living. Home to John L. Malone, and as viewed by this court in contemplation of law, was with his parents in Sandusky, Ohio." *Malone*

*v. Nationwide Mut. Ins. Co.* (Jan. 31, 1986), Erie App. No. E–85–3, unreported, 1986 WL 1306.

From this evidence, as well as the fact that the term "resident" was not defined in the insurance policy and that " 'that which is not clearly excluded from the contract is included,' " *Koby,* 124 Ohio App.3d at 178, 705 N.E.2d at 750, quoting *Home Indemn. Co. v. Plymouth* (1945), 146 Ohio St. 96, 32 O.O. 30, 64 N.E.2d 248, paragraph two of the syllabus, we cannot say that the trial court erred in finding that appellee was a resident of the household of his maternal grandparents as a matter of law.

In its second issue for review, appellant asserts that even if the trial court correctly determined that appellee was an insured under its policy, the trial court nonetheless erred in awarding coverage because of the restricting language of an other-insurance clause in appellant's policy, which prorated similar insurance and stated that appellant's insurance was excess over that of others.

 We find that appellant has waived the right to assert this issue and that the trial court did not abuse its discretion in overruling the motion for reconsideration on this issue. While we allowed appellant some leniency in the first assignment for its failure to respond to summary judgment, we did so because appellant's counsel indicated, just barely, at the summary judgment hearing that the residency issue was the only issue for review. Counsel in that same hearing specifically stated, "I think that's all the issues." Appellant never raised this issue until its motion for reconsideration was filed, almost three months after the court granted appellee's summary judgment motion.

 Again, we do not subscribe to the theory that a party should be able to use a motion for reconsideration as a vehicle to assert for the very first time arguments that could have and should have been presented from the very beginning of the case. Appellant had a duty to assert the antistacking issue in its answer as an affirmative defense or in a pretrial motion under Civ.R. 12(B). The Ohio Supreme Court has held that "[a]ffirmative defenses other tha[n] those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings. Civ.R. 8; Civ.R. 15." *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 20, 688 N.E.2d 506, 508. An affirmative defense is "a new matter which, assuming the complaint to be true, constitutes a defense to it." *State ex rel. Plain Dealer Publishing Co. v. Cleveland, supra,* 75 Ohio St.3d 31, 33, 661 N.E.2d 187, 189, citing *Davis v. Cincinnati, Inc.* (1991), 81 Ohio App.3d 116, 119, 610 N.E.2d 496, 497–498; Black's Law Dictionary (6 Ed.1990) 60. The Ohio Supreme Court adopted the description of an affirmative defense as " 'any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the "confession") but asserts some legal

reason why the plaintiff cannot have any recovery on that claim (the "avoidance").' (Footnote omitted). 1 Klein, Browne & Murtaugh, Baldwin's Ohio Civil Practice (1988) 33, T 13.03." *State ex rel. Plain Dealer Publishing Co. v. Cleveland, supra,* 75 Ohio St.3d at 33, 661 N.E.2d at 189–190.

Assuming *arguendo* that the antistacking argument was not considered an affirmative defense, appellant could have also asserted the issue in a response to appellee's motion for summary judgment, a motion that addressed the policy language. At the very least, appellant had the ability to assert this issue at the summary judgment hearing. Instead, counsel indicated that no other issues existed. Outside of the motion for reconsideration filed after summary judgment was granted, appellant made not one prior reference to its other-insurance provision. As held in *Chace v. Dorcy Internatl., Inc.* (1991), 68 Ohio App.3d 99, 112, 587 N.E.2d 442 450–451, appellant has waived the error by failing to raise it at the appropriate time in the trial court. If appellant thought the issue important, it "had an opportunity and a duty to raise this issue either at hearing or by brief" at the appropriate time. *Id.* Appellant's second assignment of error and issue for review is therefore without merit.

In its third assertion of error, appellant argues that the court erred in granting a money judgment to appellee because the lawsuit was a declaratory judgment action. Appellant also argues that it was entitled to a jury trial because GAIC had requested one in its answer. These assertions are without merit.

 While a declaratory judgment declares only the "rights, status, and other legal relations" of the parties, R.C. 2721.02, a money judgment must be rendered when the prayer for relief contains an express request for a money judgment or contains an expression that can be construed as such a request. *Johnson v. Burgins* (1995), 103 Ohio App.3d 584, 587, 660 N.E.2d 525, 527, quoting *Jeppe v. Blue Cross of Northeast Ohio* (1980), 67 Ohio App.2d 87, 92–93, 21 O.O.3d 406, 409–411, 425 N.E.2d 947, 951–952. Appellee's declaratory judgment action of December 8, 1993, specifically requested money judgments against each of the defendants, including appellant. It stated that appellee was demanding a declaratory judgment in his favor against appellant and "a judgment entered in his favor, in the sum of Two Hundred Thousand Dollars ($200,000.00), plus interest and costs herein." This specific demand and amount were reiterated in the last clause of the complaint as well. Additionally, appellee filed an amendment to his demand for judgment on August 27, 1996, demanding a declaratory judgment and judgment against appellant for $200,000 plus prejudgment and postjudgment interest, attorney fees, and costs. The trial court awarded appellee the money judgments that he sought against appellant. We find no abuse of discretion.

Nor was appellant entitled to a jury trial on the issue of damages in the instant case. R.C. 2721.10 allows a jury trial in declaratory judgment actions similar to other civil actions when an issue of fact is under determination. R.C. 2311.04 provides:

"Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only * * * shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure.

"All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

Appellant is correct that right to a jury trial does exist when a declaratory judgment action seeks the recovery of money. *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380, 15 OBR 497, 474 N.E.2d 320. However, neither appellee nor appellant requested a jury trial, and thus the right was waived. Civ.R. 38(D) states that the right to a jury trial is waived if a party fails to serve a jury demand as required by the rule. Civ.R. 38(B) indicates that a demand for a jury trial shall be in writing and may be endorsed on a pleading and the demand must be made at any time after the beginning of the action until fourteen days after the service of the last pleading directed on the issue. Appellant never requested a jury trial. Further, appellant requested in its answer that "the declaratory judgment sought against it be denied and that a trial to the Court be held."

Additionally, evidence on the amount of damages was presented by way of affidavit by appellee on June 22, 1994 in his memorandum in opposition to NMIC's motion for summary judgment, a copy of which was sent to appellant. Appellee stated in his affidavit that the medical expenses he had incurred were approximately $400,000. Appellant at no point disputed the amount of damages incurred until the motion for reconsideration was filed, after its policy limits were granted to appellee. In fact, we must reiterate that at the hearing on appellee's motion for summary judgment, appellant's counsel indicated that no other issues needed to be addressed before the court made its decision.

Appellant's last argument asserts that the trial court erred in granting prejudgment interest on the money judgment rendered in favor of appellee. Appellant bases most of its argument on an assumption that the trial court erred in granting a money judgment at all and argues that since the money judgment was inappropriate, so is the award of prejudgment interest, citing *Aetna Cas. & Sur. Co. v. Curci* (Nov. 15, 1995), Lorain App. No. 95CA006102, unreported, 1995 WL 678613. We have found that the money judgment was appropriate, and thus, most of appellant's arguments on this issue are without merit. Further, *Aetna*

*Cas.* is distinguishable from the instant case in that the *Aetna* court found that the trial court erred in awarding prejudgment interest because no actual money judgment was involved in the declaratory judgment action.

Appellant also asserts in this issue that prejudgment interest could not be awarded without a hearing and without a petition after judgment for such interest. Appellant argues that R.C. 1343.03(C) and not R.C. 1343.03(A) applies, so that a separate hearing had to be held after the award of judgment upon motion by appellee. Appellant cites *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 658, 635 N.E.2d 331, 347, in support.

Appellant's argument is without merit. R.C. 1343.03(C) does require a motion and hearing in order to award prejudgment interest. This section applies only to "the payment of money rendered in a civil action based on tortious conduct." The Ohio Supreme Court has held that claims for underinsured motorist insurance are contractual in nature and therefore R.C. 1343.03(A) applies. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140, 1141–1142. At the relevant time, R.C. 1343.03(A) provided:

"In cases other than those provided for in 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

A determination regarding prejudgment interest rests in the discretion of the trial court. *Lovejoy v. Westfield Nat. Ins. Co.* (1996), 116 Ohio App.3d 470, 476, 688 N.E.2d 563, 567, citing *Glimcher v. Reinhorn* (1991), 68 Ohio App.3d 131, 587 N.E.2d 462. We cannot find that the trial court abused its discretion in awarding prejudgment interest in accordance with the rate prescribed in R.C. 1343.03(A).

Further, although not required by statute to do so, appellee did in essence move the court for prejudgment interest. Appellee filed a motion on October 24, 1996, seeking approval of his proposed judgment entry granting summary judgment and awarding him $200,000, attorney fees, and prejudgment interest. In this motion, appellee indicated that he was not requesting an *oral* hearing on this motion. The type of hearing to conduct as regards prejudgment interest is within the trial court's discretion. It need not be oral but can be

submitted upon properly filed documents. *Laverick v. Children's Hosp. Med. Ctr. of Akron, Inc.* (1988), 43 Ohio App.3d 201, 205, 540 N.E.2d 305, 310. The proposed judgment entry contained a grant of prejudgment interest at a rate of ten percent from the date of the accident. A copy of this motion with the attached proposed judgment entry was mailed to appellant on October 23, 1996, as indicated by the certification. We find no abuse of discretion in this matter.

For all of the foregoing reasons, the assignments of error advanced by appellant are without merit. Accordingly, the trial court judgment is hereby affirmed.

*Judgment affirmed.*

Cox, P.J., and GENE DONOFRIO, J., concurs.