OPINION
{¶ 1} Plaintiffs-appellants Robert and Tammy Hill appeal the decision of the Carroll County Common Pleas Court which granted declaratory judgment in favor of Intervening plaintiff-appellee Westfield Insurance Company. The threshold issue is whether defendant Ryan Cundiff is an insured. As we find that the trial court's factual decision that Ryan was not a resident of his parents' household (and thus was not an insured) is properly supported by the evidence, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Defendant Ryan Cundiff lived in a camper at 10117 Mantle Road in East Rochester, Ohio with his girlfriend, Patricia Miller. On September 17, 2001, appellants Robert and Tammy Hill arrived at the property to visit Patricia, who was Tammy's sister. However, Patricia sent them away before they could get out of their car. It was claimed that appellant Robert screamed threats to defendant Ryan as they left. Ryan then filed a police report alleging trespass by appellant Robert Hill.
 {¶ 3} Thereafter, Robert Hill returned to Ryan's camper with his brother, Richard Hill. He admitted at Ryan's criminal trial that he intended to engage in a fist fight with Ryan. They parked at the gate to the driveway, and Robert began walking toward Ryan who had exited his camper.
 {¶ 4} Ryan testified that Robert threatened to kill him and ran at him. Ryan said that he sprayed Robert with pepper spray just as Robert jumped on him. Ryan stated that the spray was then knocked out of his hand and both brothers started toward him, so he pulled out his gun. Robert picked up a brick but testified that he dropped it when Ryan pulled out the gun.
 {¶ 5} In the meantime, Patricia was in the camper calling the police. Ryan instructed her to bring out her pepper spray. She then used her spray as the Hills retreated to the car. Ryan testified that as they approached the car, Robert voiced his intent to get a gun out of his car. Thus, Ryan instructed Patricia to keep spraying. Ryan and Patricia testified that when they reached the car, Robert started beating Patricia.
 {¶ 6} Robert stated that he only swatted at her in order to knock the mace out of her hands because he had been continuously sprayed on his way down the driveway and could not get into his car to leave. He said that Patricia kept taunting that if he touched her, Ryan would kill him.
 {¶ 7} Because Robert was allegedly hitting Patricia and threatening to get his gun, the defendant shot Robert three times with a .40 caliber semi-automatic handgun. The bullets hit Robert's left buttocks, his left lower back and his spinal cord. The last bullet paralyzed Robert, likely for life.
 {¶ 8} In June 2002, Ryan was tried criminally for felonious assault. The court refused to instruct on self-defense or defense of another, finding that the defense failed to present evidence that Ryan did not violate a duty to retreat. Still, the jury returned a verdict of not guilty.
 {¶ 9} On September 17, 2002, appellant Robert Hill filed a civil complaint against Ryan Cundiff. He alleged assault and battery, negligence and intentional infliction of emotional distress and sought compensatory and punitive damages. His wife, Tammy, alleged loss of consortium. Answers in defense were filed on Ryan's behalf by Ryan's private attorney and an attorney for Westfield Insurance Company. Ryan also filed a counterclaim asserting assault, battery, trespass, burglary and negligence.
 {¶ 10} On July 29, 2003, appellee Westfield Insurance Company filed a motion to intervene. Westfield explained that it provided a homeowner's policy to William and Linda Cundiff, Ryan's parents. Westfield stated that they were providing a defense to Ryan with a reservation of rights due to its claim that neither he nor his acts were covered. The court allowed intervention. Thus, Westfield's complaint for declaratory relief was filed seeking a declaration that it had no duty to indemnify Ryan in this lawsuit.
 {¶ 11} The Hills successfully sought bifurcation of the issues so that Westfield's declaratory judgment action would be tried before their substantive claims against Ryan. The parties later agreed that the declaratory action would be submitted to the trial court on the briefs, stipulations, depositions and exhibits and that a formal trial would be waived. The Hills and Westfield submitted trial briefs on the issue of Ryan's coverage. The exhibits included the criminal trial transcript and depositions of Ryan, his parents, the Hills, Patricia Miller and Westfield's claims analyst.
 {¶ 12} On July 21, 2005, the court filed a thirteen-page opinion and judgment entry. The court ruled in favor of Westfield on all three alternative issues raised as to why coverage was inapplicable. First, the court found that Ryan was not insured under the terms of the policy because he did not reside in his parents' household. Second, the court found that the camper and the surrounding property was not an insured location because none of the definitions applied; including the one about where an insured was temporarily residing because Ryan was found not to be an insured. Third, the court found that even if Ryan were an insured, his intentional acts were excluded. The policy excludes acts which were expected or intended, and the court found this exclusion applicable because (1) the policy did not provide a self-defense exception and (2) he had previously ruled that self-defense was not sufficiently established at the criminal trial.
 {¶ 13} The Hills [hereinafter appellants] filed timely notice of appeal. We note that neither Ryan nor his parents asserted positions in the trial court regarding coverage by Westfield, and they did not present arguments on appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 14} The three assignments of error raised by appellants correspond to the three issues addressed by the trial court. Appellants' first assignment of error provides:
 {¶ 15} "RYAN CUNDIFF WAS A `DUAL RESIDENT' OF THE MANTLE-ROAD CAMPER AND HIS PARENTS' HOME IN CANTON. THE TRIAL COURT FAILED TO CONSTRUE WESTFIELD'S UNDEFINED TERMS IN FAVOR OF ITS INSURED."
 {¶ 16} The homeowner's policy issued to William and Linda Cundiff provides coverage for certain bodily injury or property damage for which the insured is legally liable. The policy defines insured as: "you [named insured and spouse who is a resident of the same household] and residents of your household who are * * * your relatives * * *." Thus, in order for William and Linda Cundiff's son, Ryan, to be considered an insured under the policy, he would have to have been a resident of their household on September 17, 2001. William and Linda Cundiff lived at 2130 Market Avenue in Canton, Ohio at that time and for the two decades prior thereto.
 {¶ 17} Westfield points out the following facts. At the time of the shooting, twenty-year-old Ryan listed his address as 10117 Mantle Road in East Rochester, Ohio. In his deposition, he disclosed that he had been living in the trailer on Mantle Road for four months prior to the September 17, 2001 shooting. There was no testimony as to where he was living prior to moving into the trailer. Some evidence established that Ryan paid for utilities such as electric, telephone, septic service and propane at the trailer. At the criminal trial in June 2002, Ryan testified that his address was 10117 Mantle Road and described it as his residence and his property. (Tr. 395, 402). He received service of process in this case at the trailer address in October 2002. His girlfriend, Patricia Miller, testified in her deposition that she lived at the trailer with Ryan and thereafter they lived together in an apartment in Perry Township for almost two years.
 {¶ 18} Appellants Robert and Tammy Hill respond with the following facts. Ryan did not own the trailer or surrounding property. Ryan testified that he listed his parents' address on his tax returns filed the year before and the year after the accident. When asked about giving the camper address at the criminal trial, Ryan stated: "I kind of split addresses there. Some of my stuff went to Mantle Road, some went to 2130 [Market Avenue], so I guess either address I would have gave them would probably be truthful." (Depo. 14-15).
 {¶ 19} Ryan's father and girlfriend implied that he was only temporarily camping at the property. For instance, Ryan's father testified that Ryan was camping out at the trailer at the time of the September 17, 2001 incident and had been for the summer. He stated that Ryan "would spend nights there with his girlfriend, he would come back to our residence and spend nights there also. He's always maintained a room in our home and he's always welcome to come back." (Depo. 32). William Cundiff also stated that Ryan has lived with them on and off for most of his life, moving out into the camper or various apartments and then moving back in. And, Ryan's mother testified that at the time of incident, he was between their house and the trailer.
 {¶ 20} Appellants contend that these facts establish that Ryan had dual residency concerning both his parents' house and the camper at the time of the incident. They claim that resident and household are vague terms that should be liberally construed in the policyholder's favor. They also urge that facts involving residency after the incident are not relevant to residency on the day of the incident.
 {¶ 21} As for the latter argument, Ryan's residency at the trailer after the incident would tend to show that his residence at the trailer was not just a temporary summer camping experience as now claimed. Such fact could be used to judge credibility.
 {¶ 22} We then turn to consideration of any ambiguities. First, even an ambiguous insurance contract is not to be construed in favor of the Hills or in favor of Ryan. As the Supreme Court explained:
 {¶ 23} "Likewise, where `the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party. Cook v. Kozell
(1964), 176 Ohio St. 332, 336, 27 O.O.2d 275, 199 N.E.2d 566. This rings especially true where expanding coverage beyond a policyholder's needs will increase the policyholder's premiums. Id." Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, ¶ 14.
 {¶ 24} "When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant. * * * If the policyholder's interest is not considered at this initial phase, we risk construing the policy against the policyholder." Id. at ¶ 35.
 {¶ 25} Contrary to appellants' suggestions, providing coverage to Ryan does not necessarily work in William and Linda Cundiff's favor. They did not file a claim for coverage, did not submit a position on the issue in the trial court and are not presenting arguments on appeal. Appellants argue that common sense requires us to conclude that coverage for the son would be in the Cundiff's best interest. However, this is not so. As William Cundiff testified, he cannot find coverage for his new construction due to this suit against his son. A large payout on their homeowner's policy will increase their rates, possibly result in their insurer dropping their coverage and harm their chances of getting coverage in the future.
 {¶ 26} Regardless, use of the words "resident" and "household" does not make the policy ambiguous. Just because the term "resident" has no bright line test and is determined by applying and weighing various factors does not make that part of the insurance contract unclear. Ohio courts regularly evaluate these words in insurance policies by merely applying their plain and ordinary meaning. Shear v. West American Ins. Co. (1984),11 Ohio St.3d 162, 166. For instance, in Shear, the Supreme Court defined an insurance policy's use of the word "household" as "those who dwell under the same roof and compose a family" or "a social unit comprised of those living together in the same dwelling place." Id., citing Webster's Third New International Dictionary. And, the Tenth District has stated:
 {¶ 27} "`resident' as used in the phrase `resident of your household' refers to one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." Farmers Ins. of Columbus, Inc. v. Taylor
(1987), 38 Ohio App.3d 68, 70.
 {¶ 28} The Tenth District then concluded that a minor child of divorced parents who spends over one hundred sixty-two days with her father is a resident of that household even though she spends two hundred days with her mother. Id. Thus, they recognized the dual residency doctrine based upon the substantial amount of time regularly spent at each residence. Id. (where the policy does not specifically prohibit more than one residence).
 {¶ 29} This court has also recognized that one can have more than one residence when it comes to an insurance policy. Rose v.National Mut. Ins. Co. (1999), 134 Ohio App.3d 229, 242-243 (7th Dist.). We agreed with the court's findings that temporarily living away from home to attend college or serve in the military does not destroy residency at the parents' house if certain factors exist. Id. In determining residency, courts have looked at many factors such as: amount of time in each place and regularity of stays, age, intent, reason for being away, whether the named insured is legally obligated to the person, mail delivery, storage of belongings, use, driver's license, voting records and tax forms.
 {¶ 30} This leads us to the main issue here. That is, whether the facts provided to the trial court require a finding of dual residency. As Westfield points out, the parties agreed to submit the case on the merits by way of documentary evidence and briefs without an oral trial. This was not a summary judgment situation. This was a trial to the court whose judgment on factual matters is not to be reversed if there exists some competent and credible evidence to support that judgment. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279.
 {¶ 31} Although the existence of the dual residency doctrine may be a question of law subject to de novo review, whether that doctrine applies in a particular case is fact-driven. The court recognized the doctrine here, but found it was not established by the facts presented. Where there are two reasonable views of the evidence, the appellate court is bound to uphold the view chosen by the fact-finder. We thus only reverse if the decision was against the manifest weight of the evidence. See Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 32} Additionally, we must point out here that the one seeking to recover on an insurance policy generally has the burden of demonstrating coverage under the policy. Westfield,100 Ohio St.3d 216 at ¶ 35, citing Inland Rivers Serv. Corp. v.Hartford Fire Ins. Co. (1981), 66 Ohio St.2d 32, 34. Thus, the burden was on appellants to show Ryan's residency in the Cundiff household, not on Westfield to show the absence of his residency in that household.
 {¶ 33} Contrary to appellants' contentions, a finding that Ryan was both a resident of his parents' Canton household and a resident of the camper was not the only reasonable interpretation of the evidence. Rather, the court could construe the evidence as only demonstrating that Ryan's overnight visits to his parents' house were just that, visits that were transient in nature. The fact that they kept his old room for him in case he wished to move back in or the fact that he may have stored some belongings in their house does not compel a dual residency finding.
 {¶ 34} Moreover, there was no estimate of the amount of time Ryan spent in each place. When Ryan's mother was asked how often he stayed at their house, she replied, "Boy, it's been awhile. It varied, you know, it just varied. There was no specific days, but between there and the house, and I believe they stayed at [the girlfriend's parents'] home too at times." (Depo. 10). Thus, they presented no concrete evidence on the proportion of time factor, which is highly relevant in a case where nothing is obstructing the son from returning to his parents as in a child of divorced parents case, a college student case, or a military serviceperson case.
 {¶ 35} Testimony that Ryan often moves in and out of his parents' house does not automatically establish dual residency. Rather, it could be interpreted as merely meaning that he often changes his residency status from one location to another. Letting your adult child know that he is always welcome to return to your home if he falls on hard times does not mean that the child maintains dual residency at all times.
 {¶ 36} In conclusion, there was no testimony that compelled a finding that Ryan had a regular, alternating living arrangement or a consistent living pattern which existed for a period of some duration or regularity. The trial court could reasonably weigh the evidence in favor of finding that Ryan's only residence at the time of the incident was at the trailer and that his parents' house was not his residence at that time.
 {¶ 37} As such, the trial court could properly determine that Ryan was not an insured under the terms of the policy after considering the facts and circumstances presented on the factual issue of residency. We cannot substitute our judgment for that of the fact-finder on this matter of coverage. Accordingly, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 38} Appellants' second assignment of error contends:
 {¶ 39} "THE FACT THAT THE MANTLE ROAD PROPERTY WAS NOT AN `INSURED LOCATION' UNDER WESTFIELD'S POLICY HAS NO BEARING ON WHETHER THERE IS LIABILITY COVERAGE FOR THE PERSONAL LIABILITIES OF RYAN CUNDIFF."
 {¶ 40} Appellants do not contest the trial court's finding that the Mantle Road property was not an insured location, which would be an alternative method of establishing liability. Rather, in this assignment, appellants misconstrue the "insured location" portion of the trial court's holding as pertaining to whether Ryan's act was covered. Because we held that Ryan was not an insured in the first assignment of error, this assignment of error is moot.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 41} Appellants' third and final assignment of error alleges:
 {¶ 42} "AN INTENTIONAL-INJURY EXCLUSION TO A LIABILITY POLICY NEED NOT CONTAIN A `SELF-DEFENSE' OR `DEFENSE-OF-ANOTHER' EXCEPTION FOR THOSE EXCEPTIONS TO APPLY UNDER OHIO PUBLIC POLICY."
 {¶ 43} Due to our holding under assignment of error number one finding that Ryan is not an insured, we need not discuss this assignment. The intentional tort exclusion and the self-defense and defense of another exceptions are irrelevant if there is no coverage for the defendant in the first instance. Hence, this assignment of error is moot.
 {¶ 44} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.